IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION

KENNETH LOVELL HOXSEY,

    Plaintiff,

vs.

PAUL FELDMAN, et al.,

    Defendants.

No. C22-61-LTS-KEM

**MEMORANDUM OPINION AND ORDER**

_____

## I. INTRODUCTION

This matter is before me on a motion (Doc. 29) for summary judgment filed by defendants Paul Feldman, David Rose, Mitchell Michel and Brannen Hudson. Plaintiff Kenneth Lovell Hoxsey has filed a resistance (Doc. 33) and defendants have filed a reply (Doc. 37). Oral argument is not necessary. *See* Local Rule 7(c).

## II. PROCEDURAL HISTORY

On June 24, 2022, Hoxsey commenced this action by filing a 42 U.S.C. § 1983 complaint (Doc. 1-1) and motion (Doc. 1) to proceed in forma pauperis. The complaint alleges deliberate indifference based on a fall from a prison van. Hoxsey also filed a motion (Doc. 2) to appoint counsel, which was denied, although a subsequent motion was granted. *See* Doc. 17.

On March 8, 2023, I granted Hoxsey's motion to proceed in forma pauperis and allowed his deliberate indifference claim to proceed against all but one of the defendants. Doc. 6. Defendants then filed an answer (Doc. 9) and now seek the entry of summary judgment.

## III.   SUMMARY JUDGMENT STANDARDS

Any party may move for summary judgment regarding all or any part of the claims asserted in a case. Fed. R. Civ. P. 56(a). Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

A material fact is one that "'might affect the outcome of the suit under the governing law.'" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Thus, "the substantive law will identify which facts are material." *Id*. Facts that are "critical" under the substantive law are material, while facts that are "irrelevant or unnecessary" are not. *Id*.

An issue of material fact is genuine if it has a real basis in the record, *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir. 1992) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986)), or when "'a reasonable jury could return a verdict for the nonmoving party' on the question." *Woods v. DaimlerChrysler Corp.*, 409 F.3d 984, 990 (8th Cir. 2005) (quoting *Anderson*, 477 U.S. at 248). Evidence that only provides "some metaphysical doubt as to the material facts," *Matsushita*, 475 U.S. at 586, or evidence that is "merely colorable" or "not significantly probative," *Anderson*, 477 U.S. at 249–50, does not make an issue of material fact genuine.

As such, a genuine issue of material fact requires "sufficient evidence supporting the claimed factual dispute" so as to "require a jury or judge to resolve the parties' differing versions of the truth at trial." *Anderson*, 477 U.S. at 248–49. The party moving for entry of summary judgment bears "the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record which show a lack of a genuine issue." *Hartnagel*, 953 F.2d at 395 (citing *Celotex*, 477 U.S. at 323). Once the moving party has met this burden, the nonmoving party must go beyond the pleadings and by depositions, affidavits, or otherwise, designate specific facts showing that there

2

is a genuine issue for trial. *Mosley v. City of Northwoods*, 415 F.3d 908, 910 (8th Cir. 2005). The nonmovant must show an alleged issue of fact is genuine and material as it relates to the substantive law. If a party fails to make a sufficient showing of an essential element of a claim or defense with respect to which that party has the burden of proof, then the opposing party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 322.

In determining if a genuine issue of material fact is present, I must view the evidence in the light most favorable to the nonmoving party. *Matsushita*, 475 U.S. at 587–88. Further, I must give the nonmoving party the benefit of all reasonable inferences that can be drawn from the facts. *Id.* However, "because we view the facts in the light most favorable to the nonmoving party, we do not weigh the evidence or attempt to determine the credibility of the witnesses." *Kammueller v. Loomis, Fargo & Co.*, 383 F.3d 779, 784 (8th Cir. 2004). Instead, "the court's function is to determine whether a dispute about a material fact is genuine." *Quick v. Donaldson Co., Inc.*, 90 F.3d 1372, 1376–77 (8th Cir. 1996).

## IV. RELEVANT FACTS

The following facts are undisputed unless otherwise noted. Hoxsey is a 43-year-old male who is currently serving a ten-year sentence for burglary in the second degree, burglary in the third degree, theft in the third degree, theft in the fourth degree, carrying weapons, eluding and forgery. He has been incarcerated at the Anamosa State Penitentiary (ASP) since June 29, 2021.

On September 26, 2021, Hoxsey was treated at University of Iowa Hospitals and Clinics (UIHC) for numbness in his right leg and abdominal pain, which turned out to be a three-centimeter thrombus (blood clot).[1] Doc. 37-1 at 1-2. He underwent a bilateral

---

[1] Defendants do not dispute Hoxsey's medical history or records, but note that they had no knowledge of this information.

groin cutdown thrombectomy to remove the blood clot. *Id.* at 2. He asserts that he scored a 5 on the "fall risk assessment scale" meaning he showed some risk factors, but not enough to be designated a severe fall risk.[2] Hoxsey was discharged on September 30, 2021, and returned to ASP with sutures in his right leg. *Id.* at 3. Hoxsey was issued a cane in October 2021, but the parties dispute how long he was permitted to use it. *Id.* at 3-4. Defendants note that Hoxsey's authorization to use a cane expired on November 12, 2021, but Hoxsey maintains that he used it into December 2021. *Id.* According to Hoxsey, on October 23, 2021, his fall risk was increased from a 5 to 7, meaning he was at risk for falling.[3]

On December 21, 2021, Hoxsey was scheduled for a follow-up appointment at UIHC. He and three other inmates were placed in security cuffs, waist chains and leg restraints prior to being placed in a transport van. *Id.* at 5. The parties dispute the extent to which the leg restraints limited Hoxsey's mobility. *Id.* The transport van arrived at UIHC and parked in the designated area for Iowa Department of Corrections transport vehicles. *Id.* The parties dispute what happened as Hoxsey tried to exit the van.

Hoxsey asserts that none of the four attending officers assisted him in stepping out of the van. *Id.* at 6. When he reached the back edge of the van, he states his leg restraints got caught in a hole on the floor of the van and caused him to fall forward. *Id.* He states officers Feldman and Michel tried to catch him but were unable to stop him before he landed on his right side. *Id.* He states the fall knocked the wind out of him and that landing on his right leg, which was sensitive due to the previous surgery, caused him severe pain such that he cried. *Id.* at 7. When the officers asked if he was okay, Hoxsey responded: "That fucking hurt . . . yeah." Doc. 33-1 at 5. According to Hoxsey, the

---

[2] Defendants dispute that the cited evidence supports this and note they had no knowledge of this information. *See* Doc. 37-1 at 2.

[3] Defendants dispute that the cited evidence supports this and note they had no knowledge of this information. Doc. 37-1 at 3.

4

officers left him on the ground in pain for an estimated two and a half minutes. *Id. See also* Doc. 33-1 at 4-5.

Defendants assert that officers Feldman and Michel opened the back doors of the van and assisted inmates out of the van. Doc. 37-1 at 6. As Hoxsey made his way to the back of the van, Feldman and Michel steadied him by holding him under his arms, but as he was stepping out of the van, Hoxsey stepped on his leg restraints, tripped and began to fall forward. *Id.* Because the officers were holding Hoxsey under his arms, they caught him and he did not fall to the ground. They contend they placed Hoxsey on the ground as his weight was coming forward and, after a couple seconds on the ground, they assisted Hoxsey up into a transport chair. *Id.*[4] Defendants state that when Feldman asked Hoxsey if he was okay, Hoxsey said "yeah." Doc. 33-1 at 5.

The parties also dispute what happened during the appointment after the fall and if Hoxsey suffered an injury as a result of the fall. According to Hoxsey, Feldman told the doctor that Hoxsey "had a little fall in the parking lot." Doc. 37-1 at 7. Hoxsey states he asked the doctor to look at his right leg and the doctor stated he may have reinjured his tendons or muscle tissue that were still recovering from the thrombectomy. *Id.* at 8. Defendants state Hoxsey told the nurse about the trip and fall and his scraped knee. The nurse examined it and thought it looked okay and did not see any other visible injuries. *Id.* Defendants note the UIHC medical records have no documentation of any complaints by Hoxsey regarding the fall. *Id.* They assert Hoxsey suffered no physical injury as a result of tripping while exiting the transport van. Doc. 33-1 at 5.

The parties also dispute what happened after Hoxsey returned to ASP and the extent to which the fall resulted in ongoing pain. According to Hoxsey, he complained to medical staff on December 27, 2021, that his right leg was in extreme pain and they gave him a knee brace. Doc. 37-1 at 8. Defendants admit that medical staff ordered

---

[4] In describing the fall to a nurse six days later, Hoxsey stated "the [correctional officers] caught me before I hit too hard, but I still hit the ground." Doc. 37-1 at 7.

Hoxsey a right knee sleeve, but dispute that the medical records otherwise support Hoxsey's assertion. They also note they had no knowledge of any of the information in Hoxsey's medical records. Hoxsey asserts he continued complaining of pain and/or numbness in his right leg on January 7 and 13, April 5 and May 2, 2022, attributing it to the fall from the transport van. *Id*. at 8-9. Defendants dispute that the medical records support some of these complaints and note they had no knowledge of the information contained therein.

Hoxsey wrote a grievance concerning the trip and fall on December 27, 2021. Doc. 33-1 at 8. On January 4, 2022, Feldman and Michel wrote incident reports concerning the trip and fall. *Id*. at 7-8. On January 19, 2022, a grievance officer investigated Hoxsey's grievance. He obtained information from prison medical staff, UIHC medical records and the incident reports from Feldman and Michel. *Id*. at 8. On January 28, 2022, the grievance officer denied Hoxsey's grievance. Hoxsey submitted an appeal on February 1, 2022, which he supplemented on February 6, 2022. The warden denied his appeal on February 15, 2022. Hoxsey then appealed to the Central Office on February 22, 2022. That appeal was denied on March 10, 2022. *Id*. at 9.

Hoxsey then filed various lawsuits against correction officers and the warden in the Iowa District Court for Jones County. These cases were dismissed for various reasons, which Hoxsey notes were unrelated to the merits of his claims. *Id*. at 10-13.

## V. DISCUSSION

Defendants argue Hoxsey's claims are barred by principles of res judicata and that they are otherwise entitled to judgment as a matter of law. They also argue that his claim for monetary relief is barred by 42 U.S.C. § 1997e(e). Alternatively, they argue they are entitled to qualified immunity. I will address each argument in turn.

## A. *Res Judicata*

Defendants argue Hoxsey's claims are barred by res judicata based on his previously filed and dismissed cases against defendants in Iowa District Court for Jones County. Hoxsey argues these dismissals do not count for purposes of res judicata because the court did not enter final judgment in any of the cases.

"Res judicata operates so that 'a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action.'" *Brown v. Kansas City Live, LLC*, 931 F.3d 712, 714 (8th Cir. 2019) (quoting *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398 (1981)). Federal courts must "give preclusive effect to state-court judgments whenever the courts of the State from which the judgments emerged would do so." *Allen v. McCurry*, 449 U.S. 90 96 (1980) (citing 28 U.S.C. § 1738). Under Iowa law,[5] "res judicata embraces two concepts: claim preclusion and issue preclusion." *Dorsey v. State*, 975 N.W.2d 356, 361 (Iowa 2022) (quoting *Braunschweig v. Fahrenkrog*, 773 N.W.2d 888, 893 (Iowa 2009)).

> The general rule of claim preclusion holds that a valid and final judgment on a claim bars a second action on the adjudicated claim or any part thereof. [I]ssue preclusion prevents parties to a prior action in which judgment has been entered from relitigating in a subsequent action issues raised and resolved in the previous action.

*Id.* (internal quotations and citations omitted). Iowa courts have recognized that "the res judicata rule speaks in terms of requiring 'a final judgment on the merits.'" *Peppmeier v. Murphy*, 708 N.W.2d 57, 64 (Iowa 2005). Black's Law Dictionary defines judgment on the merits as a "judgment based on the evidence rather than on technical or procedural grounds." *Black's Law Dictionary* (11th ed. 2019). Iowa Rule of Civil Procedure 1.951

---

[5] *See St. Paul Fire & Marine Ins. Co. v. Compaq Computer Corp.*, 539 F.3d 809, 821 (8th Cir. 2008) ("The law of the forum that rendered the first judgment controls the res judicata analysis.").

defines judgment as "[e]very final adjudication of any of the rights of the parties in an action."

It is undisputed that Hoxsey filed lawsuits against defendants in state court. His cases against Rose and Michel were dismissed without prejudice for failure to properly serve the defendants and comply with a court order. Doc. 29-3 at 68, 76. His cases against Feldman and Hudson were dismissed without prejudice for failure to comply with a court order.[6] *Id.* at 74, 78. "A dismissal without prejudice leaves the parties as if no action had been instituted. It ends the particular case but is not such an adjudication itself as to bar a new action between the parties." *Kirlin v. Monaster*, 984 N.W.2d 412, 416 (Iowa 2023) (quoting *Venard v. Winter*, 524 N.W.2d 163, 167 (Iowa 1994)). A failure to exhaust administrative remedies deprives the district court of subject matter jurisdiction. *See Segura v. State*, 889 N.W.2d 215, 224 (Iowa 2017). "Once a court determines that it lacks subject matter jurisdiction over a claim, it has no power to enter a judgment on the merits and must dismiss the action." *Cooper v. Kirkwood Community College*, 782 N.W.2d 160, 164 (Iowa Ct. App. 2010).

Because none of Hoxsey's prior cases resulted in a judgment on the merits, res judicata does not bar his claims in this lawsuit. Defendants' motion for summary judgment on this basis is denied.

### B. *Deliberate Indifference Claim*

Defendants argue they are entitled to judgment as a matter of law on Hoxsey's deliberate indifference claim because the conditions he encountered when he tripped while exiting the transport van do not rise to the level of a constitutional violation.

"Liability under § 1983 may arise "for violations of rights protected by the Constitution, not for violations of duties of care arising out of tort law." *Baker v.*

---

[6] Hoxsey's case against Feldman was later resurrected after Hoxsey was able to show good cause to set aside the court's order of dismissal. *See* Doc. 29-3 at 80-86. It was then dismissed a second time for failure to exhaust administrative remedies. *Id.*

*McCollan*, 443 U.S. 137, 146 (1979). A conditions of confinement claim is analyzed under a deliberate indifference standard. *See Thomas-El v. Francis*, 99 F.4th 1115, 1117 (8th Cir. 2024). To establish an official's deliberate indifference, a plaintiff must demonstrate: (1) a substantial risk of serious harm to the inmate existed and (2) the prison official knew of and disregarded that risk. *Robinson v. Hager*, 292 F.3d 560, 563-64 (8th Cir. 2002) (citing *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)); *see also Morris v. Cradduck*, 954 F.3d 1055, 1058 (8th Cir. 2020). "Deliberate indifference . . . is the equivalent of criminal recklessness: the defendant must be 'aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Hodges v. Minn. Dep't of Corr.*, 61 F.4th 588, 592 (8th Cir. 2023) (citation omitted).

As to the objective element, Hoxsey argues he has demonstrated a genuine issue of material fact that the conditions of his confinement posed a substantial risk of serious harm. He cites his previous medical history, including his thrombectomy and evaluation as a fall risk,[7] and notes that he was expected to exit the van unassisted while in leg shackles from a height of about three feet off the ground.

As to the subjective element, Hoxsey notes the officers who picked him up from UIHC following his thrombectomy were the same officers who transported him on December 21, 2021. He also cites his use of a cane prior to being put in the transport van and the fact that he had to limp to the van when the cane was confiscated as a safety precaution. He states the officers had to help him get into the van and knew he could not get in without assistance. He argues that despite knowing about the pain in Hoxsey's leg

---

[7] Defendants argue the evidence Hoxsey cites does not support the fall risk evaluation. I disagree to the extent they contend the records do not assign a fall risk score to Hoxsey. The medical records include notations for mobility/ambulation, mental status, sensory/communication deficit medications, last fall, age-related risk and nursing judgment. Doc. 34 at 32. It then includes a "FRAS [Fall Risk Assessment Score] Total." *Id.* Below that, the record describes "Universal Fall Safety Measures" in place. The medical records do not explain what a "5" on the FRAS scale means and Hoxsey does not request that the court take judicial notice of the FRAS scale. In any event, I do not find the facts related to his fall risk to be determinative to his claims.

and the significant treatment he had undergone, defendants disregarded the serious risk that Hoxsey could fall out of the van and did not try to aid him in stepping out of the van.

When viewing the facts in the light most favorable to Hoxsey, there is insufficient evidence from which a reasonable jury could conclude that a substantial risk of serious harm existed and that the officers knew of the risk and disregarded it. With regard to the objective element, Hoxsey admits that the fall was the direct result of the leg restraint chain going down a hole in the van as Hoxsey was trying to exit. *See* Doc. 34 at 97 ("When I tried to get out of the van, my ankle chain went down a hole and snagged, causing me to fall out of the van and land on my right side."). However, his claim is not based on the hole in the van posing a substantial risk of serious harm. Rather, it is based on evidence that he was a fall risk or had difficulty ambulating without his cane and was expected to exit the van unassisted and in leg restraints. Even if Hoxsey has presented sufficient evidence to establish these facts and defendants' knowledge of them, it is insufficient to establish the existence of a *substantial* risk of *serious* harm to Hoxsey or that officers ignored a substantial risk of serious harm.

Generalized knowledge that an inmate has difficulty walking unassisted is insufficient without more. *See Jones v. Meddly*, Case No. 1:7-cv-00109, 2019 WL 3302358, at *8 (E.D. Cal. July 23, 2019) (plaintiff telling the officers he had difficulty maintaining balance while his hands were cuffed behind his back did "not rise to the level of awareness of a disabling condition or proclivity of falling combined with a failure to respond to complaints about a dangerous condition that would translate into a constitutional violation"). Slip and fall cases based on deliberate indifference typically require a hazardous condition *and* additional dangerous factors – such as susceptibility to falling. *See Pyles v. Fahim*, 771 F.3d 403, 410 (7th Cir. 2014) ("slippery surfaces and shower floors in prisons, without more, cannot constitute a hazardous condition of confinement."); *Bell v. Ward*, 88 F. App'x 125, 127 (7th Cir. 2004) ("Although wet floors do present a possibility that inmates might slip . . . [such] allegations do not suggest a *substantial* risk of serious harm that reflects the deliberate indifference required to

10

impose liability under the Eighth Amendment."). Here, Hoxsey does not allege any hazardous condition of confinement akin to a slippery floor, but relies merely on the fact that he was more susceptible to falling than the average inmate under the same conditions and officers did not offer him assistance prior to his fall. This is insufficient to establish there was a substantial risk of harm.

As to the subjective prong, the record lacks evidence concerning the officers' knowledge of a substantial risk of serious harm. Because it is undisputed that the restraint getting caught in the van floor caused Hoxsey's fall, he would need to present evidence that the hole or some condition prior to his fall was known to and ignored by officers. *See Schaub v. VonWald*, 638 F.3d 905, 915 (8th Cir. 2011) ("Deliberate indifference must be measured by the official's knowledge at the time in question, not by hindsight's perfect vision.") (cleaned up). While he argues that he was expected to exit the van unassisted, in leg shackles and from a height of about three feet off the ground, he would need evidence that the lack of assistance *prior* to the fall presented a substantial risk of serious harm. The only evidence Hoxsey cites is his generalized fall risk and the leg restraints. As noted above, there is nothing in the record to indicate those conditions alone subjected Hoxsey to a *substantial* risk of *serious* harm. As such, those conditions are not sufficient to put officers on notice that Hoxsey faced a substantial risk of serious harm in making his way to the back of the transport van. Hoxsey has failed to demonstrate a genuine issue of material fact that a substantial risk of serious harm existed and that defendants knew of that risk and disregarded it. As such, defendants are entitled to summary judgment on Hoxsey's claim of deliberate indifference.

### C. Qualified Immunity

Alternatively, defendants argue they are entitled to qualified immunity because their conduct did not amount to a constitutional violation and it was not clearly established that failure of correctional staff to prevent a shackled inmate exiting a transport van from stumbling on his leg restraints violates the Eighth Amendment. Hoxsey argues defendants

11

are not entitled to qualified immunity because he was put in an objectively dangerous situation and defendants should have reasonably known that Hoxsey was at a heightened risk of falling. He argues the right to be protected from unreasonable fall risks has been clearly established in three specific cases. *See* Doc. 33 at 19.

Qualified immunity shields a government official from individual liability when his conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *accord Davis v. Hall*, 375 F.3d 703, 711-12 (8th Cir. 2004). "The Supreme Court has generously construed qualified immunity protection to shield 'all but the plainly incompetent or those who knowingly violate the law.'" *Davis*, 375 F.3d at 711-12 (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). "Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines." *Id.* (citing *Maciariello v. Sumner*, 973 F.2d 295, 298 (4th Cir. 1992)). To determine whether a defendant is entitled to qualified immunity, courts ask (1) whether the facts alleged or shown establish a violation of a constitutional or statutory right, and (2) whether that constitutional right was clearly established as of the time of the alleged violation. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009). Unless the answer to both of these questions is yes, a defendant is entitled to qualified immunity. *See Burton v. St. Louis Bd. of Police Comm'rs*, 731 F.3d 784, 791 (8th Cir. 2013).

"For a right to be 'clearly established,' the law must have been sufficiently clear, at the time of the official's conduct, to put every reasonable official on notice that what he was doing violated that right." *Hamner v. Burls*, 937 F.3d 1171, 1177 (8th Cir. 2019) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)). Stated another way, its "contours must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (internal quotations omitted). "A plaintiff need not cite a case directly on point, but controlling authority or a robust consensus of cases of persuasive authority must have put the statutory or constitutional question beyond debate as of the date of the alleged violation."

12

*Hamner*, 937 F.3d at 1177 (quoting *Wilson v. Layne*, 526 U.S. 603, 617 (1999) (internal quotations omitted)). For example, in a case involving mold in and around a jail's showers, it is impermissibly broad to characterize this as involving the right to sanitary prison conditions for purposes of the "clearly established" prong of qualified immunity. *See Thurmond v. Andrews*, 972 F.3d 1007, 1012 (8th Cir. 2020).

With regard to whether the right was clearly established, Hoxsey cites *Reynolds v. Dormire*, 636 F.3d 976 (8th Cir. 2011), in which an inmate brought a § 1983 action against correctional officers based on failure to help him exit a prison van. *Reynolds*, 636 F.3d at 978-79. The factual allegations are somewhat different,[8] but more importantly, the Eighth Circuit was reviewing the district court's dismissal of the complaint for failure to state a claim. *Id.* The court concluded only that Reynolds' allegations against two officers were sufficient to state a claim, but did not discuss the merits of those allegations and whether they amounted to an Eighth Amendment violation.

Hoxsey also cites *Anderson v. Morrison*, 835 F.3d 681, 682 (7th Cir. 2016) and *Balle v. Kennedy*, 73 F.4th 545, 554-55 (7th Cir. 2023). In *Anderson*, the plaintiff alleged he was ordered by prison guards to walk handcuffed down stairs covered with milk and garbage, resulting in a fall that knocked him unconscious. *Anderson*, 835 F.3d at 682. Again, the Court of Appeals was reviewing a dismissal by the district court. *Id.* In *Balle*, the plaintiff alleged that a kitchen supervisor at the prison directed him to carry near-boiling water in a plastic five-gallon bucket across a wet-damaged floor, which resulted in a fall and severe burns. *Balle*, 73 F.4th at 548. The court noted that exposing inmates to a greater danger than a slip and fall could violate the Eighth Amendment, but the plaintiff failed to produce sufficient evidence as to the officers' subjective knowledge. *Id.* at 554-57. As such, his deliberate indifference claim failed as a matter of law.

---

[8] Reynolds alleged the officers parked too close to the sally port pit and failed to help him descend from the van while in leg restraints, resulting in him falling approximately five feet. *Reynolds*, 636 F.3d at 978-80.

Here, Hoxsey identifies the constitutional right at issue as the right to be protected from unreasonable fall risks. Even if this characterization of the right is not impermissibly broad, it is not clearly established. The cases Hoxsey cites do not clearly establish such a right and he has cited no other case putting the "constitutional question beyond debate," *see Hamner*, 937 F.3d at 1177, such that a reasonable official would understand that the actions in this case violated that right. *Hope*, 536 U.S. at 739. Thus, even if Hoxsey could establish that defendants violated his constitutional rights, he has not identified authority establishing that defendants' actions were clearly prohibited.

Because Hoxsey is unable to demonstrate that the right in this case was "clearly established," defendants are entitled to summary judgment based on qualified immunity. *See Burton*, 731 F.3d at 791 (noting that a plaintiff must establish both a violation of a constitutional or statutory right and that constitutional right was clearly established as of the time of the alleged violation).[9]

## VI. CONCLUSION

For the reasons set forth herein, defendants' motion (Doc. 29) for summary judgment is **granted**. Judgment **shall enter** in favor of defendants and against Hoxsey and the Clerk of Court shall **close this case**.

**IT IS SO ORDERED** this 11th day of June, 2024.

_____
Leonard T. Strand
United States District Judge

---

[9] Because I find defendants are entitled to summary judgment on Hoxsey's deliberate indifference claim or alternatively based on qualified immunity, I need not analyze whether Hoxsey's claim of monetary damages is barred by 42 U.S.C. § 1997e(e).